☑ Original ☐ Duplicate

CLERK'S OFFICE
A TRUE COPY
Dec 05, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>premises located at 740 E. Bay Point Road, Bayside, Wisconsin, including<br>the white, ranch-style, single family residence located on the premises, as<br>well as the curtilage including the garage, a black 2019 Acura TLX sedan,<br>safes, locked containers, storage containers, computers, and cell phones<br>located on the premises | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 25 MJ 204 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____12/19/2025_____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable William E. Duffin, U.S. Magistrate Judge_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: ___12/05/2025 10:20 A.M.___                    *William E. Duffin*
                                                                                                    *Judge's signature*

City and state: ___Milwaukee, Wisconsin___                    Honorable William E. Duffin, U.S. Magistrate Judge
                                                                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This property to be searched is the PREMISES located at 740 E. Bay Point Road, Bayside, Wisconsin., including the white, ranch-style, single family residence located on the premises, as well as the curtilage including the garage and a black 2019 Acura TLX sedan, safes, locked containers, storage containers, computers, cell phones (whether in the actual, physical possession of a person or not) located on the premises, as pictured below:



<u>**ATTACHMENT B**</u>

**I.     Property to be Seized**

1.  All records relating to violations of 18 U.S.C. §§ 875(c) (Transmission of Interstate Threats) & 2261A(2)(B) (Stalking), those violations involving BRADLEY SCOTT ROSE, and occurring after May 1, 2022, including:

a.  Records and information relating to the transmission of threatening, harassing, and/or intimidating communications to any person in any form including words, pictures, or emojis;

b.  Identities, addresses, photographs, PII, contact information, of any former coworker, colleague, professional associate, or their family members, that may have been searched for or collected for the purpose of transmitting threatening, harassing, and/or intimidating communications;

c.  Records and information relating to the surveilling and/or monitoring of any former co-workers or their family members;

d.  Records and information relating to communications with Internet Protocol address 98.144.59.74;

e.  Any firearms including a Smith & Wesson SD40, and a Sig Sauer P210.

2.     Computers or storage media used as a means to commit the violations described above.

3.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries,

configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

2

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

4.  Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disk drives or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical

3

experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.



CLERK'S OFFICE
A TRUE COPY
Dec 05, 2025
s/MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No.   25   MJ   204 |
| *or identify the person by name and address)* | ) | |
| premises located at 740 E. Bay Point Road, Bayside, Wisconsin, including the white, | ) | |
| ranch-style, single family residence located on the premises, as well as the curtilage | ) | |
| including the garage, a black 2019 Acura TLX sedan, safes, locked containers, | ) | |
| storage containers, computers, and cell phones located on the premises | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 875(c) | Transmission of Threats Interstate |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Mark Dring, Special Agent - FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:  _____12/05/2025_____

_____
*Judge's signature*

City and state:  ___Milwaukee, Wisconsin___      Honorable William E. Duffin, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Mark L. Dring, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at 740 E. Bay Point Road, Bayside, Wisconsin, hereinafter "PREMISES," further described in Attachment A, for the things described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since March of 2007. Since July of 2025, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including online threats and other violent crime matters, defined under Title 18 of the United States Code. I have participated in the investigation of numerous crimes to include warrants to multiple electronic service providers and utilized email search warrants to pursue investigation both domestically and abroad.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C § 875(c), Transmission of Interstate Threats, and 18 U.S.C. § 2261A, Stalking, have been committed by Bradley Scott ROSE. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes as further described in Attachment B.

**PROBABLE CAUSE**

5.     Bradley Scott ROSE is a U.S. citizen, born June 01, 1984. During the period of 2017 through May 2022, ROSE worked for Microsoft Corporation, Remond, Washington. ROSE worked for Microsoft while living in Bayside, Wisconsin, a suburb of Milwaukee, Wisconsin. ROSE's direct supervisor for Microsoft was P.M., who also resides in a suburb of Milwaukee, Oconomowoc, Wisconsin.

6.     Prior to ROSE leaving Microsoft, he claimed discrimination by P.M. in February of 2022. Microsoft investigated the claims internally and found no discrimination, and found instead ROSE to be at fault. ROSE voluntarily left Microsoft in May of 2022, before the investigation concluded, citing personal reasons. Prior to and after leaving Microsoft, ROSE blamed P.M. for his situation and began calling P.M. in the middle of the night utilizing the telephone number (414) 899-7970. ROSE has also tried to contact P.M. from his brother's mobile telephone (262) 402-2614.[1] ROSE made several calls, blocked the caller ID information, and on January 29, 2025, sent the following text message from (262) 402-2614:

---

[1] An open records search on Google indicates that this telephone number belongs to B.C. Rose. According to Bayside, WI Police reports, B.C. Rose is Bradley S. ROSE's brother. According to the same police reports, B.C. Rose has down syndrome, and as of 07/06/2025, had also been diagnosed with schizophrenia. It is therefore possible, if not likely, that Bradley S. Rose is using B.C. Rose's telephone to make contact with P.M. and others.





7. P.M. further noted that ROSE would view her LinkedIn profile almost daily in 2022, particularly after ROSE left Microsoft. Further, according to P.M., ROSE reached out to P.M.'s spouse and brother via Facebook and LinkedIn beginning on approximately February 26, 2024, and continuing until he was blocked.

8. Search warrant records obtained from Verizon, Google, LinkedIn, and Facebook revealed that ROSE utilized an iPhone for his mobile device, with the current telephone number 414-899-7970. Records from Google and Facebook revealed that ROSE utilizes both his iPhone and a Macintosh PC to log into accounts, sometimes using both on the same day. The most recent information available from Facebook shows ROSE logging into Facebook on November 17, 2025, via his iPhone. Google and Facebook logs reveal that ROSE's iPhone utilized Internet Protocol (IP) address 98.144.59.74.

9. T.I., resident of Menomonee Falls, Wisconsin, was hired to replace ROSE at Microsoft and take over ROSE's sales territory. T.I. and her husband J.I. are both employees of Microsoft. During the period of January 2023 through June 2024, ROSE worked for a Microsoft partner named, "Root16." ROSE contacted T.I. to cooperatively increase sales. According to T.I., she conducted a Microsoft Teams meeting with ROSE, who acted like a longtime friend and spoke about her husband like ROSE knew J.I., although J.I. never had prior contact with ROSE. T.I. stated she felt uncomfortable after speaking with him and did not respond to further emails and texts. T.I further elaborated, that during this timeframe, January 2023 through June 2024, ROSE would view her LinkedIn profile almost daily. Later, in 2025, with the most recent instance in July 2025, ROSE has regularly viewed the profiles on LinkedIn of three former coworkers from Microsoft: H.H., S.H., and T.P.

4

10.     ROSE requested J.I.'s contact information from a mutual associate, J.G. On May 16, 2025, J.G. introduced J.I. to ROSE by text message (below). ROSE then called J.I. multiple times that day without success.



Later that same day, ROSE sent the following text message to J.I., from (414) 899-7970:



11.     The text messages during the introduction to J.I. indicated ROSE already knew J.I and T.I. resided in Menomonee Falls, WI.  ROSE had no prior contact with T.I. or J.I. where personal address information would have been shared.

12.     T.I. and J.I. contacted the Menomonee Falls Police Department, who advised J.I. and T.I. to block ROSE's calls and text messages, and to have no further contact with him.

13.     During the period of June 2024 – December 2024, ROSE worked for Illumina Technologies, another Microsoft partner company. A.A. acted as ROSE's supervisor. A.A. stated that during ROSE's time with Illumina, ROSE made many mistakes, causing problems with Microsoft. In October 2024, Illumina initiated a performance improvement plan with ROSE. In response, ROSE began sending derogatory messages to A.A.'s team. ROSE was terminated on December 17, 2024.   After ROSE's termination, he utilized Bradley.s.rose@gmail.com to communicate with Illumina.

14.     After his termination from Illumina, ROSE began sending harassing text messages from (414) 899-7970 to A.A. and P.M. During December 2024 and in January 2025, while A.A. attended a trade show in New York City, A.A. received the following messages from ROSE via text message from (414) 899-7970: A.A. stated if he lived close to ROSE, he would be more fearful.

6





15.     A close inspection of the photographs of the pistols sent to A.A., the guns appear to be a Smith & Wesson SD40, and the other is a Sig Sauer P210. Both are semi-automatic pistols.

16.     Records obtained from Facebook reveal that in a "Facebook Event"[2], ROSE is listed in an event called, "Wisconsin Concealed Carry Class" located at 2701 Larsen Road, Green Bay, Wisconsin. The date of the class was October 25, 2025.

17.     Following the receipt of the photographs with weapons, A.A. contacted local law enforcement in Colorado and filed a report. The responding officer spoke with ROSE by telephone. ROSE denied knowing A.A. and ever working for Illumina Technologies. The officer noted that ROSE became belligerent as the call progressed.

---

[2] Facebook events is a feature on Facebook that allows users to create, find, and manage events such as personal gatherings or professional ones. *See* https://www.facebook.com/help/1076296042409786

18.     A.A. is not sure where or how ROSE obtained the photo of him and his family that ROSE sent to A.A. (above).  A.A. stated the family photograph was most likely on the Facebook page of A.A.'s sister-in-law, L.A.  A.A. further stated ROSE had utilized Facebook and LinkedIn to contact at least five members of his family, including A.A.'s spouse H.A., sister-in-law L.A., father M.A. and family members K.A. and E.A.

19.     The Facebook warrant revealed ROSE sent friend requests to A.A. on 12/19/2024, K.A. on 01/06/2025, and H.A. on 01/17/2025.   These requests to A.A. and extended family members occurred while ROSE was sending harassing texts with his phone.

20.     On the morning of June 6, 2025, ROSE made several calls to T.I. from (414) 899-7970. When the calls weren't answered, he sent the following text message:



21.     On June 11, 2025, P.M. noticed a suspicious vehicle outside her Oconomowoc, Wisconsin, residence for almost 20 minutes. The vehicle, a black sedan, is consistent with ROSE's registered black 2019 Acura TLX sedan. When P.M. attempted to confront the driver, the vehicle reversed quickly, almost crashing into another vehicle, and then departed. P.M. lived in Chicago when ROSE worked at Microsoft, and P.M. never provided ROSE with a personal address. According to records obtained from Google, ROSE searched the internet to obtain P.M.'s address.

22.     P.M.'s neighbor captured the black Acura sedan on a doorbell camera system. According to telemetric records obtained, ROSE's Acura traveled to P.M.'s subdivision on three separate occasions: December 22, 2024, January 2, 2025, and June 11, 2025. The records indicated ROSE was stationary in P.M.'s subdivision for at least 41 minutes on June 11, 2025. On June 12, 2025, P.M. filed a report with Oconomowoc Police Department (OPD) documenting the incident.



23.     ROSE's sedan, observed at his residence on October 28, 2025 and November 17, 2025, is shown below:

10



24.     During early July 2025, Microsoft Executive Security, H.S. contacted the FBI and indicated a senior Microsoft Executive had received a threatening communication from the email bradley.s.rose@gmail.com.  While the specific content of the email was not provided, H.S. felt the content was serious enough to contact the FBI.

25.     According to records obtained from Google, on July 8, 2025, ROSE sent an email to S.N., with the following content:

S., Good morning,

I woke up this morning to thoughts of your dead disabled child witnessing the harm your company has caused these past few years. You are a piece of shit despite your achievements.

Karma is coming for you and you know it.

11

May God have mercy on your soul.

Cheers,

26.     According to records obtained from Google, ROSE was logged into Google at the time the email to S.N. was sent and utilized IP address 98.144.59.74. Further, according to LinkedIn records, ROSE logged into LinkedIn the same day, again with IP address 98.144.59.74

27.     On July 16, 2025, P.M. received five calls in a two-minute period from ROSE, from telephone number (414) 899-7970. Also on July 16, 2025, J.M., an executive with Root 16, received an email from ROSE, using the email account bradley.s.rose@gmail.com, with the threat: "You have a lot to answer for BITCH!!! See you in Washington." ROSE sent a second email to J.M. on 07/18/2025 with a similar message. J.M. was scheduled to be a keynote speaker at a Microsoft executive partner event in Bellevue, Washington on July 23- 24, 2025. J.M. explained that J.M.'s spouse, K.M. and sister, L.M. also both received contacts from ROSE via Facebook and LinkedIn since ROSE had left Root16. J.M. cancelled his speaking engagement in Bellevue as a result of ROSE's communications.

28.     According to records obtained from Google, ROSE was logged into Google on 07/16/2025 and 07/18/2025 when the emails to J.M were sent.  IP address records corresponding to the time of the emails showed ROSE utilized 98.144.59.74 for both emails.

29.     During September of 2025, a former romantic interest of ROSE's, S.W. provided information on a 2013 temporary restraining order (TRO) filed against ROSE. When S.W. ended the approximately five-month relationship with ROSE, S.W. recalled that ROSE "blew up every social media account" with hundreds of calls, texts, emails. S.W. particularly recalled ROSE reviewing S.W.'s LinkedIn account almost daily, even after the TRO had been filed.  S.W. described ROSE's actions as a "campaign of terror".

12

## THE PREMISES

30.     ROSE lives at 740 E. Bay Point Road, Bayside, Wisconsin, just west of the intersection of Bay Point Road and North Pelham Parkway.  The residence is a white ranch-style home with the house number "740" above the garage door. ROSE's black 2019 Acura TLX sedan is registered to this address. In addition, ROSE has been observed coming and going from the residence during surveillance in September and November of 2025.

31.     A police report from Bayside Police Department (BPD) dated December 5, 2022, documented that ROSE owns at least one firearm.  In the report, BPD responded to ROSE's residence, 740 E. Bay Point Road, Bayside, Wisconsin (the "PREMISES") due to a call from ROSE's spouse.  ROSE's spouse indicated ROSE had made comments about committing suicide and had left the residence with his handgun.

32.     In the same police report, officers noted that ROSE stated he owns a firearm which he kept locked in a safe. ROSE shares the residence with his spouse and two minor children.

## TECHNICAL TERMS

33.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     Internet Protocol Address: An Internet Protocol address ("IP address") is a unique numeric address used by devices on the Internet. Every device attached to the Internet must be assigned a public IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination. An IP address acts much like a home or business street address—it enables devices connected to the Internet to properly route traffic to each other. Devices connected to the Internet are assigned public IP addresses by Internet service providers ("ISPs"). There are two types of IP addresses: IPv4 (Internet Protocol version 4) and IPv6 (Internet

13

Protocol version 6). An IPv4 address has four sets ("octets") of numbers, each ranging from 0 to 255, separated by periods (e.g., 149.101.82.209). An IPv6 address has eight groups ("segments") of hexadecimal numbers, each ranging from 0 to FFFF, separated by colons (e.g., 2607:f330:5fa1:1020:0000:0000:0000:00d1).

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

34. As described above and in Attachment B, this application seeks permission to search for records that might be found on the PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

35. *Probable cause*. I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a

14

storage medium can be stored for years at little or no cost.  Even when files have been deleted,
they can be recovered months or years later using forensic tools.  This is so because when a person
"deletes" a file on a computer, the data contained in the file does not actually disappear; rather,
that data remains on the storage medium until it is overwritten by new data.

      b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or
slack space—that is, in space on the storage medium that is not currently being used by an active
file—for long periods of time before they are overwritten.  In addition, a computer's operating
system may also keep a record of deleted data in a "swap" or "recovery" file.

      c.     Wholly apart from user-generated files, computer storage media—in particular,
computers' internal hard drives—contain electronic evidence of how a computer has been used,
what it has been used for, and who has used it.  To give a few examples, this forensic evidence can
take the form of operating system configurations, artifacts from operating system or application
operation, file system data structures, and virtual memory "swap" or paging files.  Computer users
typically do not erase or delete this evidence, because special software is typically required for that
task.  However, it is technically possible to delete this information.

      d. Similarly, files that have been viewed via the Internet are sometimes automatically
downloaded into a temporary Internet directory or "cache."

      36.     *Forensic evidence*. As further described in Attachment B, this application seeks
permission to locate not only computer files and information that might serve as direct evidence
of the crimes described on the warrant, but also for forensic electronic evidence that establishes
how computers were used, the purpose of their use, who used them, and when. There is probable

cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.      As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage

16

media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning),

17

or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer to send threatening or harassing messages, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is

18

evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

37.    *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

a.    The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.    Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.

19

Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.     Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

38.     *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

39.     Because several people share the PREMISES as a residence, it is possible that the PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

40.     I submit that this affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and seize the items described in Attachment B

20

## ATTACHMENT A

### Property to Be Searched

This property to be searched is the PREMISES located at 740 E. Bay Point Road, Bayside, Wisconsin., including the white, ranch-style, single family residence located on the premises, as well as the curtilage including the garage and a black 2019 Acura TLX sedan, safes, locked containers, storage containers, computers, cell phones (whether in the actual, physical possession of a person or not) located on the premises, as pictured below:



## ATTACHMENT B

### I.     Property to be Seized

1.  All records relating to violations of 18 U.S.C. §§ 875(c) (Transmission of Interstate Threats) & 2261A(2)(B) (Stalking), those violations involving BRADLEY SCOTT ROSE, and occurring after May 1, 2022, including:

a.  Records and information relating to the transmission of threatening, harassing, and/or intimidating communications to any person in any form including words, pictures, or emojis;

b.  Identities, addresses, photographs, PII, contact information, of any former coworker, colleague, professional associate, or their family members, that may have been searched for or collected for the purpose of transmitting threatening, harassing, and/or intimidating communications;

c.  Records and information relating to the surveilling and/or monitoring of any former co-workers or their family members;

d.  Records and information relating to communications with Internet Protocol address 98.144.59.74;

e.  Any firearms including a Smith & Wesson SD40, and a Sig Sauer P210.

2.     Computers or storage media used as a means to commit the violations described above.

3.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries,

configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

2

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

4.  Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disk drives or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical

3

experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied

electronic data to the custody and control of attorneys for the government and their support staff

for their independent review.